UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SEAN ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. |
| CITY OF BOSTON, ) | |
| and LYSANDER WRIGHT, ) | |
| in his individual capacity, ) | |
| ) | |
| Defendants. ) | |

## **COMPLAINT**

### **INTRODUCTION**

1. Plaintiff Sean Anderson brings this civil rights action against a Boston police officer and the City of Boston for falsely arresting and pursuing a malicious prosecution based on fabricated criminal charges in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution and under the laws of Massachusetts.

2. The City of Boston is sued for failing to investigate, supervise and discipline Boston police officers. The City knew, or should have known, prior to December 21, 2012 that Officer Lysander Wright was a problem officer. Prior to the incident involving Mr. Anderson, there were at least seventeen separate citizen complaints, internal investigations, or internal inquiries against Officer Wright. The City of Boston failed to take corrective actions to ensure that Officer Wright conforms to the law. The City's indifference to its officers' unlawful behavior permitted officers like Lysander Wright to feel that he could violate the rights of citizens without fear of punishment which was the moving force behind the violation of Plaintiff's rights.

1

**JURISDICTION**

3. This action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution. Title 28 U.S.C. §§1331 and 1343 provide federal-question jurisdiction, and 28 U.S.C. §1367 provides supplemental jurisdiction over the state law claims.

**PARTIES**

4. Plaintiff Sean Anderson[1] was at all times material to this complaint a resident of the Commonwealth of Massachusetts.

5. Defendant Lysander Wright was at all times material to this complaint a duly appointed police officer of the Boston Police Department. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

6. Defendant City of Boston is a duly organized city located in Suffolk County and was at all times material to this complaint the employer of Defendant Lysander Wright.

**FACTS**

7. On Friday, December 21, 2012, at approximately 3:35 pm, Sean Anderson was stopped at a red light on the corner of Massachusetts Avenue and Huntington Avenue in front of Symphony Hall. As he waited for the light to turn green, Mr. Anderson saw who he thought was a Symphony Hall security guard walking diagonally across the street in front of the stopped traffic.

8. The man was wearing a fluorescent green jacket without any writing on it.

9. As the light turned green, Mr. Anderson began to take his foot off his brakes when he noticed an ambulance heading towards him in his lane.

---

[1] On the date of the incident, plaintiff's name was Sean O'Brien. Subsequently, by marriage, his last name changed to Anderson.

10. Mr. Anderson immediately pulled over to the right side curb of Massachusetts Avenue, near the center island on Huntington Avenue, and came to a stop to allow the ambulance to pass.

11. As soon as he had come to a complete stop, Mr. Anderson heard a loud bang from the rear of his car. He looked in his rear-view mirror and saw the same security guard going around his car from the rear.

12. Mr. Anderson lowered his window and asked, "Did you just hit my car?"

13. The man said he did.

14. In response, Mr. Anderson said, "What the fuck?"

15. The man suddenly lunged towards Mr. Anderson, screaming, "What the fuck? Fuck you! I'll tell you what the fuck!" He then reached into the car, grabbed the keys, and yelled for Mr. Anderson to get out of the car.

16. The man opened Mr. Anderson's car door, put his hands around the neck, then grabbed Mr. Anderson by his clothes and pulled him out of the car.

17. By the collar of his jacket, the man pulled Mr. Anderson across the intersection, screaming that he was going to teach Mr. Anderson a lesson on how to speak to a police officer. The man asked, "Is that how you talk to a cop?"

18. Surprised and frightened, Mr. Anderson told the man that he did not know he was a police officer and that he had not done anything wrong.

19. The man screamed into Mr. Anderson's face, "You didn't know?!" while lifting his florescent green jacket to show Mr. Anderson a badge that was clipped to his belt.

20. Defendant Wright then continued to drag Mr. Anderson by the collar, stating "I'm going to teach you a lesson."

21. By the man's behavior, Mr. Anderson was not convinced that this could be a police officer. Scared, Mr. Anderson broke free from Defendant Wright's grasp and ran back to his car.

22. Mr. Anderson locked the doors and called 911 to report the attack.

23. With the keys that he had taken earlier, Defendant Wright opened the car door and grabbed Mr. Anderson by the throat.

24. Mr. Anderson managed to escape to the passenger seat just as other police officers arrived on scene as a result of the 911 call he made.

25. Mr. Anderson told the arriving officers to keep the man away from him.

26. The arriving officers, including then-Deputy Superintendent William Evans and Deputy Superintendent Colm Lydon, questioned Defendant Wright about his erratic behavior.

27. In response to the Deputy Superintendents' questions, Defendant Wright claimed that Mr. Anderson had tried to run him over with the car.

28. Defendant Wright changed his story when another officer who had arrived earlier told the Deputy Superintendents that Wright had initially told him that the car was already stopped.

29. Defendant Wright now claimed that Mr. Anderson almost hit him while speeding, and that out of reflex, he pushed away at the car and came into contact with Mr. Anderson's car, at which point, Mr. Anderson responded by stopping in the middle of street and swearing at him.

30. Defendant Wright placed handcuffs on Mr. Anderson tightly causing the arms and hands to go numb.

31. Mr. Anderson was transported to the police station. There, a police officer asked whether the handcuffs were too tight. The officer loosened the handcuffs.

32. Approximately 45-50 minutes later, Mr. Anderson was told that he was being booked on charges of speeding and negligent operation of a motor vehicle.

33. Defendant Wright asked the booking officer if he could go behind the glass to see what she had typed. He then said, "Why don't we add disorderly conduct, resisting arrest, and assault and battery on a public employee."

34. When Mr. Anderson asked about these false charges, Defendant Wright replied, "Yep, that's my thank you to you for calling 911. I am covering all my bases."

35. Mr. Anderson was shocked. He told Defendant Wright, "You do know that there are traffic cameras that will prove you are lying." Defendant Wright laughed in response.

36. Mr. Anderson was booked and fingerprinted on the false charges. He was then placed in a holding cell and held overnight. The next morning, he posted $750 bail and was released.

37. On Monday, December 24, 2012, Mr. Anderson was arraigned on the fabricated charges.

38. For almost a year, although Mr. Anderson knew that he was innocent, he feared that he might be convicted of the false charges.

39. The criminal charges were dismissed on December 5, 2013.

40. The City of Boston should have known that Defendant Wright was not suited for police work. Prior to the incident involving Mr. Anderson, Defendant Wright accumulated at least seventeen citizen complaints, internal investigations and/or internal inquiries including but not limited to the following:

   a. In May 2002, Defendant Wright was accused of being disrespectful to a citizen and threatening to arrest the person for no apparent reason. The complainant was a retired Boston police officer.

   b. In May 2003, Defendant Wright was accused of being negligent in his duties, using unreasonable judgment, and other violations. Specifically, on information and belief, he failed to patrol his assigned area and did not maintain radio contact with the Operations Division.

   c. Also in May 2003, Defendant Wright faced an internal inquiry.

   d. In June 2003, Defendant Wright was accused of committing a crime and conduct unbecoming an officer. Specifically, on information and belief, Officer Wright smashed a glass bottle over his daughter's head and then proceeded to beat her by striking her with a hairbrush, kicking her, punching her and strangling her to the point of her passing out.

e. In November 2003, Defendant Wright was accused of violating criminal law and conduct unbecoming an officer. Specifically, on information and belief, he was accused of physically abusing his girlfriend by inflicting small cuts with a knife on her throat and also punching her about the face. Officer Wright allegedly put his department issued firearm to her head and then fired a shot into the backyard of their residence.

f. In March 2004, Defendant Wright was accused of failing to give respectful treatment, being negligent in his duties and using unreasonable judgment. Specifically, on information and belief, Officer Wright used vulgar language at a motorist and then issued a citation only after the citizen told the officer that he was going to file a complaint against him.

g. In November 2004, Defendant Wright faced an internal inquiry.

h. Later that same month in November 2004, Defendant Wright was accused of using unreasonable force causing an injury to a female citizen's arm, being negligent in his duties and using unreasonable judgment.

i. In September 2005, Defendant Wright faced an internal inquiry.

j. In December 2006, Defendant Wright was accused of being negligent in his duty and using unreasonable judgment.

k. In January 2007, Defendant Wright was accused of failing to follow directives and orders. Specifically, on information and belief, Officer Wright was found to be outside the City limits without authorization. It was noted that Officer Wright had committed this same offense in October 2006 which was placed on file.

l. In April 2008, Defendant Wright faced an internal inquiry.

m. In September 2009, Defendant Wright faced an internal inquiry.

n. In July 2010, Defendant Wright was accused of respectful treatment, being negligent in his duties and using unreasonable judgment.

o. In September 2010, Defendant Wright did not follow Boston Police Department Rules and Regulations by not responding to the area as instructed by a dispatcher.

p. Later in September 2010, Defendant Wright faced an internal inquiry.

q. In July 2011, Defendant Wright was accused of using unreasonable force on a female arrestee.

41. Defendant Wright was arrested in March 2013 by police authorities in Lynn, MA.

42. After the arrest, on information and belief, Defendant Wright became a suspect in a separate unsolved crime in Lynn, MA.

43. Despite Defendant Wright's history of prior complaints, the City failed to take appropriate actions to deter future misconduct by Defendant Wright.

44. On information and belief, the Boston Police Department's Early Intervention System was not operational from approximately 2000 through at least 2008.

45. The Early Intervention System was established in 1992 to identify problem officers after the St. Clair Commission concluded that the Boston Police Department's process for examining civilian complaints was undermined by "shoddy, half-hearted investigations, lengthy delays, and inadequate documentation and record-keeping."

46. Prior to his retirement, Police Commissioner Edward Davis admitted publicly that the Early Intervention System had not been in operation for a number of years.

47. Defendant Wright's pattern of generating civilian and internal misconduct complaints should have automatically sent him to the Early Intervention System.

48. Soon after Mr. Anderson was released on bail, he filed a citizen's complaint against Defendant Wright. As of today's date, more than eighteen months later, the City still has not notified Mr. Anderson of the result of their investigation.

49. The failure of the City to properly investigate, discipline and supervise Defendant Wright was the moving force that led Defendant Wright violating Plaintiff's constitutional rights on December 21, 2012.

50. As a direct and proximate result of the acts of Defendants, Mr. Anderson endured emotional pain and suffering. He remains upset that he was arrested and falsely charged with crimes he did not commit.

**COUNT I:       42 U.S.C. §1983 Against Defendant Wright**

51. The above paragraphs are incorporated by reference.

52. Defendant Wright did not have probable cause to arrest plaintiff.

53. Defendant Wright unlawfully arrested plaintiff in retaliation for Mr. Anderson's exercise of his rights under the First Amendment.

54. By the actions described above, defendant Wright deprived the plaintiff of the clearly established and well-settled right secured by the First, Fourth and Fourteenth Amendments of the United States Constitution including but not limited to the freedom from unreasonable seizures.

55. Defendant Wright's actions were taken with reckless disregard for plaintiff's constitutional rights.

56. As a direct and proximate result, the plaintiff suffered the injuries as described above.

**COUNT II:     Massachusetts Civil Rights Act, M.G.L. c.11, §12 Against Defendant Wright**

57. The above paragraphs are incorporated by reference.

58. Defendant Wright violated Plaintiff's rights by threats, intimidation, and coercion.

59. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages as described above.

**COUNT II:     Claim under Massachusetts Law for False Imprisonment Claim**

60. The above paragraphs are incorporated by reference.

61. Officer Wright committed the common law tort of false imprisonment by physically arresting Mr. Anderson without probable cause.

62. As a direct and proximate result the plaintiff received the injuries as described above.

**COUNT III:    Claim under Massachusetts Law for Malicious Prosecution**

63. The above paragraphs are incorporated by reference.

64. Defendant Wright caused criminal charges to be brought and continued against Plaintiff without probable cause and with malice.

65. The criminal charges were disposed of favorably to Mr. Anderson when all charges were dismissed.

66. As a direct and proximate result of Defendants' actions, Plaintiff suffered the damages described above.

**COUNT V:  42 U.S.C. § 1983 *Monell* Claim Against the City of Boston**

67. The above paragraphs are incorporated by reference.

68. Before the incident between Plaintiff and Defendant Wright, the City of Boston had shown deliberate indifference to misconduct by its police officers, particularly Defendant Lysander Wright.

69. The City of Boston did not have a proper system for handling internal complaints about its police officers, thus giving officers like Defendant Wright the belief that they could commit misconduct with impunity.

70. The City of Boston received at least seventeen complaints against defendant Wright before the incident involving the Plaintiff. Most of these complaints were not properly or adequately investigated.

71. The City had a policy or custom of failing to properly investigate, supervise and discipline its police officers who were likely to violate citizens' rights.

72. These policies and customs were the moving force behind the actions of Defendant Wright resulting in the injury to Plaintiff.

73. As a proximate cause of the actions and omissions of the City of Boston, Plaintiff suffered damages as described above.

**WHEREFORE**, the plaintiff requests that this Honorable Court:

1. Award compensatory damages;

2. Award punitive damages against Defendant Wright;

3. Award the costs of this action, including reasonable attorney's fees; and

4. Award such other and further relief as this Court may deem necessary and appropriate.

**<u>JURY DEMAND</u>**

A jury trial is hereby demanded.

           Respectfully submitted,
           SEAN ANDERSON,
           By his attorney,

           /s/ Myong J. Joun
           Myong J. Joun
           BBO No. 645099
           Joun Law Office
           491 Massachusetts Ave., Suite 208
           Arlington, MA 02474
           Tel.: (617) 304-6186
           Fax: (866) 551-4983
           Email: mjoun@massrights.com

Dated: June 26, 2014